**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Matthew Murphy, | ) | No. CV12-01509-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Sebit LLC, et al., | ) | |
| Defendants. | ) | |

We have before us defendant Sebit LLC's motion for summary judgment (doc. 103) and separate statement of facts ("DSOF") (doc. 101), plaintiff's response (doc. 106), and defendant's reply (doc. 108).

**I**

On a motion for summary judgment we accept undisputed facts as true and review disputed facts in the light most favorable to the non-moving party. Anthoine v. N. Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010).  Plaintiff generally disputes defendant's "summary of undisputed facts," but does not provide a separate controverting statement of facts as required by LRCiv 56.1(b).  Although plaintiff lists four numbered facts in the body of his response to the motion, he does not support his assertions with citations to materials in the record as required by Rule 56(c)(1), Fed. R. Civ. P.  Instead, plaintiff makes a series of improper evidentiary objections and argues that defendant's failure to

comply with discovery deprived plaintiff of documents that would refute defendant's claims. However, plaintiff fails to identify the specific facts he seeks, or to show that such facts exist. "[A] party cannot successfully oppose a summary judgment motion by simply claiming that further discovery may yield unspecified facts that could plausibly defeat summary judgment." Smith v. Barrow Neurological Institute of St. Joseph's Hosp. and Medical Center, 2012 WL 3108811, *2 (D. Ariz. 2012) (citation omitted). Any disputed fact that a party does not support with admissible evidence is insufficient to defeat summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Because plaintiff has failed to properly address defendant's assertions of fact, we consider defendant's statement of facts as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2).

Defendant, Sebit LLC ("Sebit"), markets and sells interactive educational tools to schools in the United States, Canada, and Latin America. Sebit employed plaintiff as a special projects marketing manager between March 2009 and April 2010. At times, plaintiff worked with office coordinator Jackie Mercier, whose duties included providing administrative support to plaintiff. In November 2009, plaintiff informed Patricia Myers, Sebit's human resources director, that Mercier's work was subpar, that she constantly challenged him, and that she had touched him inappropriately on two occasions, by hugging him and by "bopping" him on the forehead with her palm. DSOF ¶ 4. Myers met with plaintiff and Mercier to develop a written plan to help both individuals improve their working relationship. In February 2010, plaintiff again complained that Mercier had inappropriately touched him. Myers met with Mercier and instructed her that she was not to touch plaintiff for any reason, under any circumstances, and that any further incidents would lead to discipline. DSOF ¶ 9. Mercier did not touch plaintiff again after the February 2010 incident.

In January 2010, Sebit hired a new CEO, Jim Bowler, who decided to restructure the entire marketing department. In March 2010, plaintiff was granted medical leave to undergo surgery for prostate cancer. While he recovered from his surgery, Sebit allowed plaintiff to work from home. After plaintiff returned to work on-site in mid-April 2010, he testified that

1  he was performing his job successfully without restrictions, and that the only thing he needed
2  to do his job was close proximity to the restroom, which Sebit granted.  On April 30, 2010,
3  Sebit informed plaintiff that his position was being eliminated due to restructuring of the
4  marketing department.

5     Following his discharge, plaintiff filed this action alleging (1) violation of the
6  Americans with Disabilities Act ("ADA"); (2) sex discrimination in violation of Title VII of
7  the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); (3) hostile work
8  environment in violation of Title VII; (4) retaliation in violation of Title VII; (5) assault and
9  battery; and (6) intentional infliction of emotional distress.  Defendant argues that it is
10  entitled to summary judgment on all counts.

## II

12  Summary judgment is appropriate if the evidence, viewed in the light most favorable
13  to the nonmoving party, shows "that there is no genuine issue as to any material fact and that
14  the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary
15  judgment is also appropriate against a party who "fails to make a showing sufficient to
16  establish the existence of an element essential to that party's case, and on which that party
17  will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct.
18  2548, 2552 (1986).

### Count I - Americans with Disabilities Act

21     Plaintiff contends that defendant violated the Americans with Disabilities Act
22  ("ADA") by firing him instead of accommodating his alleged disability.  To claim
23  protections under the ADA, plaintiff must demonstrate he is disabled within the meaning of
24  the Act.  Thompson v. Holy Family Hosp., 121 F.3d 537, 539 (9th Cir. 1997).  Disability is
25  defined as "(A) a physical or mental impairment that substantially limits one or more of the
26  major life activities of [an] individual; (B) a record of such an impairment; or (C) being
27  regarded as having such an impairment." 42 U.S.C. § 12102(2).  Defendant argues that
28  plaintiff is not disabled within the meaning of the ADA.  In his response to defendant's

motion, plaintiff simply states that he "did suffer a disability that evidenced physical and mental traumas." Response at 2.  However, he has not provided any evidence of a physical or mental impairment that substantially limited his activities.   Plaintiff's conclusory allegation is insufficient to withstand a motion for summary judgment.  Thompson, 121 F.3d at 540.  We grant summary judgment on this basis alone.  In addition, other than plaintiff's bare allegations, there is no evidence in the record that the defendant deliberately acted or failed to act because of plaintiff's alleged disability.  The motion for summary judgment on the ADA claim is granted.

### Count II, III, & IV - Title VII Claims

To establish a prima facie case of Title VII disparate treatment based on sex, a plaintiff must show that he (1) belongs to a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably.  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000).  To establish the fourth element, plaintiff must show that he is similarly situated to the employees allegedly receiving more favorable treatment in all material respects.  Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006).  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  Plaintiff has not shown that Mercier, the employee with whom plaintiff compares himself, is similarly situated in all material respects.  In his deposition plaintiff acknowledged that Mercier reported to him, and that her job duties were not the same as his.  See Doc. 101-3 at 8.  Additionally, plaintiff's response to defendant's motion does not offer evidence supporting his sex discrimination claim.  Because plaintiff does not meet his burden of establishing a prima facie case of sex discrimination, we need not reach the questions of whether Sebit had a legitimate, nondiscriminatory reason for eliminating his position and whether such reason was a pretext for discrimination.  Accordingly, we grant summary judgment for Sebit on the  Title VII sex discrimination claim.

Count three of plaintiff's complaint alleges that he was subject to a hostile work environment. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (quotation omitted). The environment must be both objectively offensive to a reasonable person and subjectively offensive to this particular plaintiff. Faragher v. City of Baca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283 (1998). When determining whether an environment is sufficiently hostile to a reasonable person, the court must consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23, 114 S. Ct. at 371. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788, 118 S. Ct. at 2283 (citations omitted). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility' code." Id.

Plaintiff alleges that during his employment with Sebit, Mercier made inappropriate comments such as, "Back off. This is my military man," one time, and "can you believe I got asked out on a date – a date by a real man?" about a dozen times. Plaintiff also claims that over the course of his employment Mercier inappropriately touched him three times by (1) "bopping" him on the forehead with her palm; (2) hugging him after he brought chocolate in to work one day; and (3) patting him on the head and saying "ooh spikies." See Doc. 101-3 at 15, 22, 23. Defendant argues that Mercier's actions did not create a hostile work environment because they were not sufficiently severe or pervasive to alter the conditions of plaintiff's employment. The behavior plaintiff complains about may be characterized as off-hand comments and isolated incidents. Moreover, there is no evidence that Mercier's conduct interfered with plaintiff's work performance. Indeed, plaintiff testified that his performance did not suffer throughout the entire period he was employed. See Doc. 101-3

at 3-4.  Because plaintiff has not presented sufficient evidence to establish that the alleged conduct was so objectively offensive as to alter the conditions of his work environment, we grant defendant's motion for summary judgment on Count III.

Count four of plaintiff's complaint alleges that Sebit retaliated against him for complaining about Mercier's alleged sexual harassment.  To establish a prima facie retaliation claim, plaintiff must show that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer evidence that the challenged action was taken for legitimate, nondiscriminatory reasons. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803, 93 S. Ct. 1817, 1824 (1973).  If the employer articulates a legitimate reason for its action, the plaintiff then bears the burden of demonstrating that the proffered reason is pretext for unlawful discrimination.  Dawson, 630 F.3d at 936.

It is undisputed that plaintiff has satisfied the first two prongs of a prima facie retaliation claim.  Sebit argues that plaintiff has not shown a causal link between plaintiff's protected activity and the adverse action.  The causal link may be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action.  Dawson, 630 F.3d at 937.  Here, the adverse employment action occurred a couple of months after the last time plaintiff complained to Sebit about sexual harassment.  Sebit contends that no causal link exists because at the time Sebit's CEO, Jim Bowler, made the decision to eliminate plaintiff's position, he was not aware that plaintiff had complained about sexual harassment.  Plaintiff counters that he personally notified Bowler about his problems with Mercier, and that it would be unlikely for a CEO to be in place for over 120 days without becoming aware of sexual harassment complaints.  Based on the circumstances in this case, a reasonable jury crediting plaintiff's assertion that he discussed the harassment claim with Bowler, could find

a causal link between plaintiff's protected activity and his discharge.  Therefore, plaintiff has satisfied  the minimal showing necessary to establish a prima facie retaliation claim.

In support of its burden to proffer a legitimate, non-discriminatory reason for its decision to discharge plaintiff, Sebit explains that it eliminated plaintiff's position as part of a comprehensive restructuring of its marketing department, and that the new positions in the department required very specific skills and extensive leadership experience, which plaintiff did not have.  The burden thus shifts to plaintiff to show that Sebit's reason is pretextual. Dawson, 630 F.3d at 937.  Plaintiff's complaint alleges that Sebit's proffered reason for eliminating his position is "flimsy, and thus susceptible of disbelief."  See Complaint at ¶ 11. However, plaintiff does not offer any direct evidence that Sebit retaliated against him because of his sexual harassment complaint.  In fact, in his deposition, plaintiff stated that he believes he "was just collateral damage in whatever [Bowler's] plan was."  See Doc. 101-3 at 7.  Because plaintiff cannot establish that Sebit's reason for discharging him was a pretext for unlawful discrimination, we grant summary judgment in favor of Sebit on the Title VII retaliation claim.

**Count V & VI - Assault/Battery & Intentional Infliction of Emotional Distress**

Plaintiff argues that based on Mercier's alleged conduct, Sebit is vicariously liable for assault and battery, and intentional emotional distress ("IIED").  "[A]n employer is vicariously liable only for the behavior of an employee who was acting within the course and scope of his employment."  Smith v. American Exp. Travel Related Services Co., Inc., 179 Ariz. 131, 135, 876 P.2d 1166, 1170 (Ct. App. 1994) (citation omitted).  Under Arizona law, an employee is acting within the scope of her employment if the employee  is "doing any reasonable thing which [her] employment expressly or impliedly authorizes [her] to do or which may reasonably be said to have been contemplated by that employment."  Id., at 135-36, 876 P.2d at 1170-71 (citation omitted).  Here, Mercier's alleged conduct was outside the scope of her employment.  There is no evidence that Mercier's actions were expressly or impliedly authorized by Sebit.  Nor could Mercier's conduct reasonably be said to have been

contemplated as necessary for her employment.  Therefore, Sebit is not vicariously liable for plaintiff's assault and battery, and IIED claims.

Plaintiff's IIED claim also fails because Sebit's decision to discharge plaintiff as part of its restructuring is not "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Patton v. First Fed. Sav. & Loan Ass'n of Phoenix, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (quotation omitted).  Accordingly, we grant defendant's motion for summary judgment on counts five and six.

### III

**IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 103). The clerk shall enter final judgment in favor of all defendants and against plaintiff.

DATED this 24th day of June, 2013.

_Frederick J. Martone_
Frederick J. Martone
Senior United States District Judge